UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TENESHA G.,

                    Plaintiff,

                -v-                      5:20-CV-1070

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                 OF COUNSEL:

OLINSKY LAW GROUP        HOWARD D. OLINSKY, ESQ.
Attorneys for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, NY 13202

SOCIAL SECURITY           LOUIS JOHN GEORGE, ESQ.
   ADMINISTRATION       Special Ass't U.S. Attorney
Attorneys for Defendant
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

DAVID N. HURD
United States District Judge

<u>**MEMORANDUM–DECISION & ORDER**</u>

# I.  <u>INTRODUCTION</u>

On September 9, 2020, plaintiff Tenesha G.[1] ("plaintiff" or "claimant") filed this action seeking review of the final decision of defendant Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act").

The Commissioner has filed a certified copy of the Administrative Record and both parties have briefed the matter in accordance with General Order 18, which provides that an appeal taken from the Commissioner's final decision denying benefits will be treated as if the parties have filed cross-motions for a judgment on the pleadings.  *See* FED. R. CIV. P. 12(c).

Plaintiff's appeal will be considered on the basis of these submissions without oral argument.

# II.  <u>BACKGROUND</u>

On November 29, 2017, plaintiff applied for SSI alleging that her seizures and depression rendered her disabled beginning on December 31, 2015.  R. at 62–63.[2]  Plaintiff's claim was denied on February 6, 2018.  *Id.* at 76–83.  At

---

[1]  In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be mentioned in this opinion.

[2]  Citations to "R." refer to the Administrative Record.  Dkt. No. 10.

her request, a hearing was held before Administrative Law Judge ("ALJ") David Romeo on August 14, 2019 in Syracuse, New York. *Id*. at 33–61. Plaintiff, represented by attorney Howard Olinsky and non-attorney Nicole Watts, appeared in person and testified. *Id*. The ALJ also heard testimony from Vocational Expert David Festa. *Id*.

On September 3, 2019, the ALJ issued a written decision denying plaintiff's application for benefits. R. at 10–20. This decision became the final decision of the Commissioner on July 7, 2020, when the Appeals Council denied plaintiff's request for review. *Id*. at 1–3.

## III.  LEGAL STANDARD

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To qualify as disabled within the meaning of this definition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or

> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step sequential evaluation process to decide whether a claimant is disabled.  20 C.F.R. § 404.1520.[3]  At step one, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity."  § 404.1520(a)(4)(i).  If so, the claimant is not disabled regardless of his medical condition or other factors.  § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments; *i.e.*, a medically determinable condition that "significantly limits" his physical or mental ability to do basic work activities.  § 404.1520(c).

If the claimant suffers from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether the impairment(s) meet or equal an impairment specifically listed in Appendix 1 of the Regulations (the "Listings").  § 404.1520(d).  If the claimant's severe impairment(s) meet or equal one or more of the Listings, then the claimant is presumed to be disabled regardless of any other factors.  § 404.1520(a)(4)(iii).

---

[3] Section 404.1520 sets forth the five-step evaluation used for DIB claims.  A parallel set of regulations govern SSI applications.  *See* 20 C.F.R. § 416.920(a)(4).

If the claimant is not presumed disabled under one or more of the Listings, then step four requires the ALJ to assess whether—despite the claimant's severe impairment(s)—he has the residual functional capacity ("RFC") to perform his "past relevant work." § 404.1520(e)–(f). If so, the claimant is not disabled. § 404.1520(a)(4)(iv).

Finally, if the claimant cannot perform his past relevant work, the Commissioner must determine if the claimant's RFC, in combination with his age, education, and work experience, permits the claimant to do any other work in the national economy. § 404.1520(a)(4)(v), (f)–(g).

The burden of proof for the first four steps is on the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). However, if the claimant shows he cannot perform his past relevant work at step four, the burden shifts to the Commissioner for step five. *Id.*

The Act further provides for judicial review of "any final decision . . . made after a hearing" by the Social Security Administration ("SSA" or the "Agency"). 42 U.S.C. § 405(g). However, the scope of this review is limited to determining whether (1) the Commissioner applied the correct legal standard to his analysis and, if so, (2) whether the final decision is supported by "substantial evidence." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (cleaned up).

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (cleaned up).  "If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Morales v. Berryhill*, 484 F. Supp. 3d 130, 140 (S.D.N.Y. 2020) (citation omitted).

However, this "deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).  Thus, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  This is so regardless of whether or not the decision is otherwise supported by "substantial evidence."  *See id.*

## IV.  **DISCUSSION**

The ALJ applied the five-step analysis to find that: (1) plaintiff had not engaged in substantial gainful activity since November 29, 2017, the application date; (2) plaintiff's seizure disorder, moderate recurrent major depressive disorder, and generalized anxiety disorder were "severe" impairments within the meaning of the Regulations; and that (3) these

impairments, whether considered individually or in combination, did not

meet or equal any of the Listings.  R. at 12–15.

   At step four, the ALJ determined that plaintiff retained the RFC to

perform "a full range of work at all exertional levels" with certain

environmental and functional limitations:

> the claimant can never climb ropes, ladders or
> scaffolds; the claimant can never be exposed to high,
> exposed places or moving mechanical parts; the
> claimant cannot operate a motor vehicle; the claimant
> can understand, remember and carry out simple
> instructions and make simple work related decisions;
> the claimant can tolerate occasional interaction with
> coworkers and supervisors and no interaction with the
> public; the claimant can tolerate occasional changes in
> work setting; and the claimant can tolerate a low level
> of work pressure defined as work not requiring
> multitasking, very detailed job tasks, significant
> independent judgment, very short deadlines, [and]
> teamwork in completed job tasks.

R. at 15.

   Next, the ALJ determined that plaintiff had past relevant work as an

Institutional / Commercial Cleaner.  R. at 19.  After considering the

Vocational Expert's testimony in light of the RFC finding, the ALJ

determined that plaintiff could still perform this past work.  *Id*.  Thus, the

ALJ concluded that plaintiff was not disabled between November 29, 2017,

the application date, and September 3, 2019, the date of his written

decision.  *Id.*  Accordingly, the ALJ denied plaintiff's application for benefits.  *Id.* at 20.

## A.  **Plaintiff's Appeal**

Plaintiff contends the ALJ's RFC determination is not supported by substantial evidence because (1) he improperly evaluated the medical opinions offered by (a) Kristen Graves, M.D., and (b) Nicole DeFurio, a Licensed Clinical Social Worker ("LCSW").  Pl.'s Mem., Dkt. No. 13 at 12–27.[4] Because these providers' opinions about the nature and extent of her mental limitations were rejected, plaintiff argues "[t]he ALJ improperly crafted the mental RFC out of whole cloth."  *Id.* at 26.

## 1.  **The Opinion Evidence**

"Where, as here, the ALJ finds at step two that a claimant has one or more 'severe' impairments but determines at step three that the claimant is not presumptively disabled, the ALJ must go on to make an RFC finding, which is an assessment of 'what an individual can still do despite his or her limitations.'"  *Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 192 (N.D.N.Y. 2019) (quoting *Cox v. Astrue*, 993 F. Supp. 2d 169, 183 (N.D.N.Y. 2012) (McAvoy, J.)).

---

[4]  Pagination corresponds to CM/ECF.

"In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and subjective symptomatology], including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 183 (N.D.N.Y. 2019) (citation omitted).

"The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." *Nedzad O. v. Comm'r of Soc. Sec.*, –F. Supp. 3d–, 2021 WL 6015004, at *5 (N.D.N.Y. Dec. 21, 2021) (quoting *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 640 (S.D.N.Y. 2019). "In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." *Tammy Lynn B.*, 382 F. Supp. 3d at 192–93 (citation omitted).

Historically, the Regulations divided evidence from medical sources into three categories: (1) treating; (2) acceptable; and (3) other.[5] Under this

---

[5] A treating source included a claimant's "own physician, psychologist, or other acceptable medical source" who has provided "medical treatment or evaluation and who has, or has had an ongoing treatment relationship" with the claimant. *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

category-based approach, an opinion from a "treating source" enjoyed special treatment: it received *controlling* weight as long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

However, on January 18, 2017, the SSA revised the rules regarding the way it evaluates evidence from medical sources.[6]  Under the new regime, "no particular deference or special weight is given to the opinion of a treating physician." *Nedzad O.*, 2021 WL 6015004, at *6 (quoting *Quiles v. Saul*, 2021 WL 848197, at *9 (S.D.N.Y. Mar. 5, 2021)).

Instead, an ALJ is now obligated to evaluate the persuasiveness of "all of the medical opinions" based on the same general criteria: (1) supportability; (2) consistency with other evidence; (3) the source's relationship[7] with the claimant; (4) the source's area of specialization; and (5) other relevant case-specific factors "that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

---

[6]  The new Regulations apply to claims filed on or after March 27, 2017.  Because plaintiff's claim was filed on November 29, 2017, the new Regulations appear to govern this appeal.  The parties do not argue otherwise.

[7]  This "relationship" factor includes (i) the length of the treating relationship; (ii) the frequency of examination; (iii) the purpose of the treating relationship; (iv) the extent of the treating relationship; and (v) whether the source examined the claimant.  20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

The most important of these factors are supportability and consistency.  20

C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Although the Regulations obligate

the ALJ to explain how he or she considered these two specific factors, "an

explanation for the remaining factors is not required unless the ALJ is

deciding among multiple medical opinions of equal support and consistency

on the same issue that differ slightly."  *Nedzad O.*, 2021 WL 6015004, at *6

(quoting *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)).

### a. **Dr. Graves**

Plaintiff treated with Dr. Graves on three occasions.[8]  R. at 630.  On June

10, 2019, at the request of plaintiff's counsel, Dr. Graves completed a medical

source statement.  *Id*. at 628–634.  Dr. Graves included at the top of this

document a handwritten notation that indicated such a statement would be

"best filled out by patient's neurologist who has followed her for several

years" and included the contact information of Vikas Gupta, M.D.  *Id*. at 630.

As to the form itself, Dr. Graves opined that plaintiff's seizure disorder

was "[c]ontrolled, with some breakthrough episodes."  R. at 630.  In response

to questions posed on the form document about the length of a typical seizure

or about whether certain factors might induce a seizure, Dr. Graves

---

[8]  Under a section entitled "frequency and length of contact," Dr. Graves reported that she had
seen plaintiff on only two occasions: April 22, 2019 and May 21, 2019.  R. at 630.  However, as
plaintiff points out, there is a third treatment note in the record from Dr. Graves dated March 12,
2019.  Pl.'s Mem. at 19 (citing R. at 700).

responded that these answers were not documented in the chart.  *Id*.  In a similar vein, Dr. Graves opined that it was "unclear" how long plaintiff could sit, stand, and/or walk without a break and indicated that she had never assessed plaintiff's functional limitations.  *Id*. at 631–32.

However, Dr. Graves did opine that plaintiff would need a job that permits her to shift positions at will.  R. at 631.  In addition, Dr. Graves noted that plaintiff would need to take frequent, unscheduled breaks of "unclear" duration during the work day, that she would be off-task "more than 20%" of the day as a result of her mental health problems, that those problems would produce "good" and "bad" days," and that, as a result, plaintiff would be absent from work "more than four days per month."  *Id*. at 632–33.

The ALJ examined Dr. Graves's opinion as part of his narrative discussion of the evidence.  R. at 18.  As relevant here, the ALJ noted that: (1) there was no "clear rationale" for Dr. Graves's statements about plaintiff's absenteeism or the need for frequent changes of position; (2) Dr. Graves indicated that Dr. Gupta, plaintiff's neurologist, would be better positioned to answer these questions; (3) Dr. Graves "pointed out that claimant's seizure occurrences were not documented in the chart"; and (4) Dr. Graves had only noted "two treating sessions" with plaintiff.  *Id*.  Based on these factors, the ALJ concluded that Dr. Graves's opinion "is not persuasive and not consistent with the record."  *Id*.

Plaintiff contends that "this is not true." Pl.'s Mem. at 15. In support of this assertion, plaintiff cites to her self-reported symptoms recorded in Dr. Graves's treatment notes and some imaging studies from April 2018 and February 2019. *Id.* at 15–16. Plaintiff also suggests that Dr. Graves's reference to plaintiff's neurologist suggests "a level of care and concern for accuracy, not a reason to discount her opinion." *Id.* at 17.

Plaintiff also notes that Dr. Graves stated that she had reviewed plaintiff's neurology records from Dr. Gupta before filling out the medical source statement. Pl.'s Mem. at 18. According to plaintiff, if the ALJ wanted further clarification about Dr. Graves's opinions he should have re-contacted her for more information or contacted Dr. Gupta himself seeking more details. *Id.* at 17.

Upon review, these arguments must be rejected. "The ALJ is obligated to develop a reasonably thorough record, which includes filling in any obvious gaps, and to then render a decision by weighing the conflicting evidence using the appropriate legal standards." *Jennifer Rose D. v. Comm'r of Soc. Sec.*, 2020 WL 68615, at *6 (N.D.N.Y. Jan. 7, 2020).

However, since 2012 the Regulations have made clear that an ALJ is not required to recontact a treating source. *See, e.g., Bradley W. v. Comm'r of Soc. Sec.*, 2020 WL 5848833, at *13 (N.D.N.Y. Oct. 1, 2020) (Baxter, M.J.). That is especially so where, as here, plaintiff's hearing representative "made

no suggestion that the ALJ obtain additional records or contact Dr.

Gupta." Def.'s Mem., Dkt. No. 16 at 13.

Equally important, plaintiff has failed to identify any legal error in the

ALJ's analysis of Dr. Graves's opinion.  Instead, plaintiff has offered citations

to other piece of evidence in the record that, in her view, tend to support a

conclusion that is different than the one reached by the ALJ.  But a reviewing

court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage*

*v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

As the Commissioner explains in detail in her opposition brief, the ALJ

relied on the appropriate Regulatory considerations before discounting Dr.

Graves's opinion.  Def.'s Mem. at 8–14.  Absent a showing of legal error, this

is not a basis for remand.  *See, e.g.*, *Z.J.F. ex rel. Conkling v. Comm'r of Soc.*

*Sec.*, 2018 WL 1115516, at *6 (N.D.N.Y. Feb. 27, 2018) (Carter, M.J.) ("It is

well settled that an ALJ is entitled to rely upon the opinions of both

examining and non-examining State agency medical consultants.").

### b. **LCSW DeFurio**

Unlike Dr. Graves, plaintiff has treated with LCSW DeFurio once or twice

a month since April of 2017.  R. at 592.  On May 22, 2019, LCSW DeFurio

completed a medical source statement in which she diagnosed plaintiff with

major depressive disorder and moderate anxiety.  *Id.*

Among other things, LCSW DeFurio opined that plaintiff was "unable to meet competitive standards" or had "no useful ability to function" in areas of mental functioning that included her ability to: (E) maintain regular attendance and to be punctual; (F) sustain an ordinary routine without special supervision; (G) work in coordination with or proximity to others; (I) complete a normal work day and work week without interruptions; (J) perform at a consistent pace; (L) accept instructions and respond appropriately; (M) get along with co-workers; (Q) interact appropriately with the general public; and (R) maintain socially appropriate behavior.  R. at 593.

LCSW DeFurio went on to opine that plaintiff "has extreme difficulties [maintaining] socially appropriate behavior" and that "she becomes upset [and] has impulse issues."  R. at 593.  LCSW DeFurio further opined that plaintiff would be off-task "more than 20%" of the workday, that her symptoms would produce "good" and "bad" days, and that she would be absent from work "more than four days per month."  *Id*. at 594.

The ALJ examined LCSW DeFurio's opinion as part of his narrative discussion of the evidence.  R. at 18.  As relevant here, the ALJ noted that: (1) the record "shows scant evidence of seizures or behavioral issues"; (2) plaintiff reported "providing childcare for her grandchildren on the weekends, and being able to take care of her own needs."  *Id*.  Based on these

factors, the ALJ concluded that LCSW DeFurio's opinion "is not persuasive and not consistent with the overall medical evidence." *Id.*

Plaintiff contends that LCSW DeFurio's "opinion is consistent with the record and behavioral issues are certainly noted." Pl.'s Mem. at 20.  In support of this claim, plaintiff recounts her longitudinal history of treatment with LCSW DeFurio, including her self-reports of seizures and emotional trauma. *Id.* at 20–23.  According to plaintiff, LCSW DeFurio's findings of more severe mental impairments are consistent with Dr. Graves's opinion and findings. *Id.* at 23.

Upon review, plaintiff's challenge to the ALJ's analysis of LCSW DeFurio's opinion will also be rejected.  As an initial matter, however, it bears noting that LCSW DeFurio's May 22, 2019 medical source statement was co-signed by Dr. Bill C. Hines, presumably in accordance with the document's written instruction that "[a] supervising physician's signature is required for Medical Source Statements completed by nurse practitioners and social workers." R. at 594.

However, as both parties point out, the ALJ did not reference Dr. Hines in his written opinion, instead attributing this evidence to LCSW DeFurio alone.  Pl.'s Mem. at 13 n.1; Def.'s Mem. at 16 n.4.  The reason this is noteworthy is that the process of one provider ratifying another's opinion has

often caused confusion in the Social Security context.  *See, e.g.*, *Tahira H. v. Comm'r of Soc. Sec.*, 2020 WL 42823, at \*9 (N.D.N.Y. Jan. 2, 2020).

This was particularly so under the prior iteration of the Regulations, which relegated opinions from licensed clinical social workers to a somewhat lesser status.  *Tammy Lynn B.*, 382 F. Supp. 3d at 194.  Because the Commissioner enjoyed more discretion regarding how to evaluate a social worker's opinion, the ALJ would sometimes discount such an opinion partially (or even entirely) on the basis that it was generated by a non-acceptable provider.

Sometimes this even happened when the social worker's opinion was co-signed or jointly authored by a so-called "acceptable" source, such as Dr. Hines.  Under those circumstances, the plaintiff on appeal would argue that the ALJ committed legal error by misidentifying the provider and therefore misjudging the value of the opinion.  *Tahira H.*, 2020 WL 42823, at \*9.

Importantly, though, there is no indication that the ALJ made that mistake in this case.  And plaintiff does not argue otherwise.  After all, under the current Regulations, the ALJ is obligated to evaluate "all of the medical opinions" based on the same general criteria.  Accordingly, the ALJ's failure to specifically reference "Dr. Hines" is not a basis for remand.

Even on the merits, plaintiff's challenge to the ALJ's decision to discount LCSW DeFurio's opinion fails for substantially the same reasons that her

challenge to the ALJ's treatment of Dr. Graves's opinion does: it relies on a summary of other record evidence that, in her own view, supports a conclusion that is contrary to the one reached by the ALJ. But that is not enough to warrant remand. *See, e.g.*, *Tammy Lynn B.*, 382 F. Supp. 3d at 195 ("Plaintiff's disagreement with the ultimate factual determinations that the ALJ drew from this record evidence is not a basis for remand.").

Plaintiff's further challenge to the ALJ's reliance on her activities of daily living must also be rejected. To be sure, "a claimant need not be an invalid to be found disabled under the Social Security Act." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (cleaned up). However, consideration of daily activities are fair game when an ALJ is trying to assess the intensity and persistence of the claimant's symptoms. *Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 436 (W.D.N.Y. 2018).

That is especially so where, as here, the ALJ contrasts this information with self-reported symptoms that a claimant has offered elsewhere, such as those recorded in treatment notes. *See* Def.'s Mem. at 18 (observing that most of Dr. Graves's "findings" were plaintiff's "subjective complaints recited in the history of present illness"); *see also Merkley v. Comm'r of Soc. Sec.*, 2017 WL 4512448, at *4 (N.D.N.Y. Oct. 10, 2017) (Suddaby, J.) ("A source's reliance on a claimant's subjective reports rather than the medical evidence

constitutes a good reason for affording less weight to a medical opinion, even from a treating physician.").

In short, "[a]n ALJ has discretion to resolve conflicts in the record, including with reference to a claimant's reported activities of daily living." *Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 492 (S.D.N.Y. 2018) (collecting cases rejecting assertion that a claimant's activities of daily living cannot be used "as evidence that a medical opinion is inconsistent with the record"). Accordingly, this argument must be rejected.

## 2. **The Mental RFC**

Finally, plaintiff contends that the ALJ "rejected all of the medical opinions that dealt with Plaintiff's mental health." Pl.'s Mem. at 26  In plaintiff's view, the ALJ only accepted the opinions about plaintiff's *physical* limitations, leaving him to "improperly craft[ ] the mental RFC out of whole cloth." *Id*.

Upon review, this final argument must also be rejected because it appears to rely on a misreading of the ALJ's written opinion. At the conclusion of his discussion regarding the medical evidence, the ALJ stated:

> In sum, the above residual functional capacity assessment is supported by the opinions of Drs. Putcha and Ganesh, and the objective medical evidence.

R. at 19.  Plaintiff appears to argue that this statement means that the ALJ's RFC finding is based *solely* on the findings of those two named sources.  Pl.'s Mem. at 26.  But a review of the ALJ's written opinion confirms that he also relied on the rest of the "objective medical evidence."

As relevant here, in formulating plaintiff's RFC the ALJ explicitly considered the opinion of State agency medical consultant S. Hennessey, Ph.D.  R. at 17.  Although Dr. Hennessey opined that plaintiff's mental impairments were "non-severe," the ALJ concluded that the actually  "record supports *greater* mental restrictions."  *Id.* (emphasis added).  The ALJ also explicitly considered the opinion of consultative examiner Jeanne Shapiro, Ph.D.  *Id.* at 18.  As with Dr. Hennessey, the ALJ concluded that Dr. Shapiro "*overestimates* the claimant's mental functioning."  *Id.* (emphasis added).

Ultimately, the ALJ included a more restrictive set of mental limitations than those assessed by either Dr. Shapiro or Dr. Hennessey, but a far less restrictive set of mental limitations than those indicated by Dr. Graves and/or LCSW DeFurio.  Def.'s Mem. at 23.  "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  Accordingly, this argument will also be rejected.

## IV.  **CONCLUSION**

The ALJ applied the correct legal standards and supported his written

decision with substantial evidence in the record.

Therefore, it is

ORDERED that

1.  The Commissioner's motion for a judgment on the pleadings is

GRANTED;

2.  Plaintiff's motion for a judgment on the pleadings is DENIED;

3.  The Commissioner's final decision is AFFIRMED; and

4.  Plaintiff's complaint is DISMISSED.

IT IS SO ORDERED.


Dated:  January 4, 2022
        Utica, New York.

David N. Hurd
U.S. District Judge